IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DENNIS NELSON

                            Plaintiff,

                                                    Civil Action No.
          v.                                        9:10-CV-1568 (DNH/DEP)

BRIAN DOUGHERTY, RN II, *et al*.,

                            Defendants.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

DENNIS NELSON, *Pro Se*
94-B-0694
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN          DEAN J. HIGGINS, ESQ.
Office of Attorney General         Assistant Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Dennis Nelson, a prolific inmate litigant who has been granted leave to proceed *in forma pauperis* ("IFP"), has commenced this action pursuant to 42 U.S.C. § 1983 alleging civil rights violations against two nurses who work at the Marcy Correctional Facility ("Marcy"), where plaintiff was incarcerated at the time of filing, and Carl Koenigsmann, who was then the Regional Medical Director and is presently the Deputy Commissioner and Chief Medical Officer within the New York State Department of Corrections and Community Supervision ("DOCCS"). In his complaint, Nelson maintains that he has been denied appropriate medical care and treatment for a long-standing stasis ulcer on his lower left leg, which he claims needs to be amputated, and asserts that the denial represents deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Plaintiff's complaint seeks recovery of $9,999.99 and an order directing his transfer to one of two other correctional facilities where, he claims, there are hospitals available that could provide him with better treatment.

Now that discovery is closed, the defendants have moved for summary judgment seeking dismissal of plaintiff's claims on a variety of grounds. Also included within their motion is an application for revocation of plaintiff's IFP

2

status based upon the "three strikes" provision of 28 U.S.C. § 1915(g). Because it is abundantly clear that plaintiff has accumulated three strikes, within the meaning of that provision, and based upon the lack of any palpable showing of circumstances sufficient to meet the imminent danger exception to the three strikes rule, I recommend that plaintiff's IFP status be revoked and that the remaining portions of defendants' motion be held in abeyance pending plaintiff's payment of the required $350 filing fee.

## I.   BACKGROUND[1]

Plaintiff is a New York State prison inmate confined under the supervision of the DOCCS.  *See generally* Complaint (Dkt. No. 1).  At all times relevant to his complaint, plaintiff was designated to Marcy, located in Marcy, New York, where he was incarcerated from May 13 until December 30, 2010.  *Id.*

In his complaint, which is lacking in factual detail, plaintiff merely states that he has commenced this action because he is in imminent danger of suffering serious physical injury to his leg, claiming that he was told by the defendants that nothing further can be done for his leg and that it will have to

---

[1]       In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

be amputated.  Complaint (Dkt. No. 1) Statement of Facts.  The facts surrounding plaintiff's claims and his medical condition, however, are more fully developed in the record now before the court.

When plaintiff arrived at Marcy in May 2010, he had been suffering from the ulcer to his lower left leg for eleven years.  Defendant's Local Rule 7.1(a)(3) Statement (Dkt. No. 25-1) ¶¶ 16-18.  Upon his transfer into Marcy, plaintiff was examined by a facility doctor, and it was noted that plaintiff had cellulitis of the left lower extremity, which was secondary to self-mutilation.[2] Plaintiff's Ambulatory Health Record ("AHR") (Dkt. No. 28-1) p. 713.  It was further noted that plaintiff was prescribed, among other things, a daily xeroform wet-to-dry dressing change for his leg wound.[3]  *Id.* at p. 712. Plaintiff's medical records reveal that medical staff at Marcy attempted at least daily dressing changes for plaintiff's left leg condition, which plaintiff often refused for various reasons, including his preference to sleep or attend programs.  *See* Plaintiff's Deposition Transcript ("Tr.") (Dkt. No.25-7) pp. 26-27; *see also, e.g.,* Plaintiff's AHR (Dkt. No. 29-3) pp. 1134, 1138-39, 1141,

---

[2]     Cellulitis is "an acute, diffuse, spreading edematous, suppurative inflammation of the deep subcutaneous tissues, and sometimes muscle, sometimes with abscess formation."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 330 (31st ed. 2007).

[3]     Upon his admission into Marcy it was also noted that plaintiff was prescribed a variety of medications for various other conditions from which he suffered.  *See* Plaintiff's AHR (Dkt. No. 28-1) p. 713.

1143-45, 1147,1150,1154, and 1158.  The condition of plaintiff's left leg ulcer therefore varied according to plaintiff's level of compliance with the prescribed treatment, and also due to his self mutilation, which included rubbing feces in his wound and picking at it.  Dougherty Decl. (Dkt. No. 25-2) ¶ 10.

On or about December 3, 2010, in addition to the dressing change, daily whirlpool treatments were prescribed for plaintiff's wound care. Plaintiff's AHR (Dkt. No. 29-3) p. 1118.  On December 15, 2010, upon examination by a Marcy medical professional, it was noted that plaintiff's leg wound exhibited less necrosis, and a recommendation was made that whirlpool treatments continue.  Plaintiff's AHR (Dkt. No. 27-2) p. 1165.

Upon Nelson's transfer into the Coxsackie Correctional Facility on December 30, 2010, he was examined by a medical professional working at that facility.  Plaintiff's left leg wound of eleven years was once again noted, as was his prescribed whirlpool treatments and daily dressing changes. Plaintiff's AHR (Dkt. No. 29) p. 861.  No emergent or dangerous medical condition was discerned at that time.  See Plaintiff's AHR (Dkt. No. 29-1) pp. 936-37, 940, and 962-963.

II.    PROCEDURAL HISTORY

5

Plaintiff commenced this action on December 28, 2010, and thereafter was granted leave to proceed IFP.[4]  Dkt. Nos. 1, 4.  Named as defendants in plaintiff's complaint are Brian Dougherty, a registered nurse at Marcy; Sandra Marin-Karas, the facility's Nurse Administrator; and Carl J. Koenigsmann, formerly the DOCCS Regional Medical Director.

On January 6, 2012, following the completion of discovery, defendants moved for summary judgment seeking dismissal of plaintiff's complaint.  Dkt. No. 25.  In their motion, defendants request revocation of plaintiff's IFP status based upon 28 U.S.C. § 1915(g).  In addition, defendants argue that 1) plaintiff's Eighth Amendment cause of action lacks merit; 2) defendants Martin-Karas and Koenigsmann were not personally involved in the constitutional violations alleged; and 3) plaintiff's request for transfer to a different facility fails to state a cause of action.  Despite having received the requisite notice of the consequences of his failing to respond, plaintiff has not submitted any opposition to defendants' motion, which is now ripe for

---

[4]     In my order dated December 23, 2010, granting plaintiff's IFP application, I addressed a potential three strikes concern and, while finding that Nelson had indeed accumulated far more than three strikes by the time his complaint was filed, concluded that his allegations met the threshold requirement under the Second Circuit's decision in *Chavis v. Chappius*, 618 F.3d 162 (2d Cir. 2010) for alleging imminent danger. Order dated February 2, 2011 (Dkt. No. 8).  In that initial order, however, I went on to note that plaintiff's IFP status would be revoked if, as the case progressed, the court concluded that he did not face imminent danger of serious physical injury at the time he commenced the action. *Id.* at p.6.

6

determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Three Strikes Provision

In their motion defendants invoke 28 U.S.C. § 1915(g), arguing that under that section plaintiff's litigation history, which includes for greater than three merit-based dismissals, warrants revocation of his IFP status.

Section 1915(g), which was enacted as part of sweeping inmate litigation reform brought about by adoption of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), though engendering far less litigation than some of its PLRA counterparts including, notably, the exhaustion of remedies requirement of 42 U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The manifest intent of Congress in enacting this "three strikes" provision was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007); *Gill v. Pidlychak*, No. 9:02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J. & Treece, M.J.).[5] The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has had three previous strikes to engage in the same cost-benefit analysis that other civil litigants must make before deciding whether to commence suit, accompanied by the filing of the full fee – that is, to assess whether the result to be achieved justifies the filing fee expenditure.  *Tafari*, 473 F.3d at 444; *Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006).  As the Second Circuit has noted, in the context of PLRA amendments requiring inmates to authorize prison officials to make deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted *in forma pauperis* status,

> [p]rior to the enactment of the *in forma pauperis*
> amendments, inmates suffered no economic
> disincentive to filing law suits.  Indeed, the very nature
> of incarceration – prisoners have substantial free time
> on their hands, their basic living expenses are paid by

---

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

> the state and they are provided free of charge the
> essential resources needed to file actions and
> appeals, such as paper, pens, envelopes and legal
> materials – has fostered a "'nothing to lose and
> everything to gain'" environment which allows inmates
> indiscriminately  to file suit at taxpayers' expense.

*Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir. 1997), *cert. denied sub nom.*,

*Nicholas v. Miller*, 523 U.S. 1126, 118 S. Ct. 1812 (1998) (internal citations

omitted); *see also Gill*, 2006 WL 3751340, at *2.

The question of whether the dismissal of a prior action qualifies as a

strike, for purposes of section 1915(g), is a matter of statutory interpretation,

and as such presents a question for the court.[6]  *Tafari*, 473 F.3d at 442-43.

In determining whether a dismissal satisfies the failure to state a claim prong

of the statute, implicated in this case, courts have drawn upon the provisions

of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance,

particularly in light of the similarity in phrasing utilized in the two provisions.

*Tafari*, 473 F.3d at 442 (citing *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir.

2005)).

---

[6]     The Second Circuit has expressed its view that the time for determination of "strikes" is only when the section 1915(g) issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that section. *DeLeon v. Doe,* 361 F.3d 93, 95 (2d Cir. 2004); *see also Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999) ("We . . . doubt whether the entry of a strike is properly considered at the time an action is dismissed").

B.    Application of Section 1915(g)

It appears to be firmly established that prior to commencing this action

plaintiff had accumulated three or more strikes falling within section 1915(g),

and Nelson seemingly does not dispute this fact.  Indeed, it appears that

Nelson has now filed fifty-four actions in the district courts which comprise

the Second Circuit since 2000. *See* Public Access to Court Electronic

Records ("PACER")

https://pcl.uscourts.gov/view?rid=7rgHIPlIE8Ofp50RCaL9bCGSC6VUD4JCy

7Bw3iWZ&page=1 (last visited July 31, 2001) ; *see also Nelson v. Warren*,

No. 10–CV–990, 2011 WL 7445581, at * 1 (N.D.N.Y. Dec. 12, 2011) (Homer,

J.) *report and recommendation adopted*, 2012 WL 685755 (N.D.N.Y. Mar. 2,

2012) (Suddaby, J.).[7]  As I noted in my previous order granting plaintiff leave

---

[7]    Plaintiff's claims in *Nelson v. Warren*, which was filed on August 17, 2010, approximately four months before this lawsuit, were similarly related to the alleged failure to treat his leg ulcer while at Marcy.  *See Nelson v. Warren*, No. 9:10-CV-0990 (N.D.N.Y. filed Aug. 17, 2010) Dkt. No. 1.  In his complaint Nelson alleged that he was in imminent danger of serious physical injury due to a "non-healing" blood clot and deep vein thrombosis.  *See id.* at § 6.  Recently, District Judge Glen T. Suddaby accepted and adopted Magistrate Judge David R. Homer's report in that action, recommending revocation of plaintiff's IFP status based upon his finding that Nelson had failed to show that his leg condition posed an imminent threat of serious physical injury, and further recommending dismissal of the complaint unless plaintiff paid the filing fee.  *Nelson v. Warren*, 2012 WL 685755.  Additionally, upon Judge Homer's recommendation, Judge Suddaby issued a bar order directing that "*in no event shall* [Nelson], *as a prisoner, bring a future civil action in forma pauperis in this District unless he is under imminent threat of serious physical injury*".  *Id.* at *5 (emphasis added in original).

to proceed IFP, numerous courts have found that Nelson has accumulated more than "three strikes" for purposes of section 1915(g).[8]  *See, e.g., Nelson v. Warren*, No. 10–CV–990, 2011 WL 7445581, at * 1; *Nelson v. Scoggy*, 9:06-CV-1146, 2008 WL 4401874, at *1 (N.D.N.Y. Sept. 24, 2008) (Mordue, C.J.); *Nelson v. Spitzer*, 9:07-CV-1241, 2008 WL 268215, at *1 (N.D.N.Y. Jan. 29, 2008) (McAvoy, J.); *Nelson v. Hamel*, 9:07-CV-0540 (N.D.N.Y. Jul. 26, 2007) (Sharpe, J.).  Moreover, as Chief Judge Mordue noted in *Nelson v. Scoggy*, "[p]laintiff does not deny that three or more inmate civil rights actions previously brought by him have been dismissed on the ground that they are frivolous, malicious, or fail to state a claim upon which relief may be granted." *Nelson v. Scoggy*, 2008 WL 4401874, at *1.

I therefore conclude that plaintiff had accumulated well in excess of three strikes, within the meaning of section 1915(g), by the time this action was filed.

C.     Imminent Danger Exception

As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her

---

[8]     Since that time it appears that plaintiff may have accumulated even more strikes.  *See Nelson v. Warren*, 2012 WL 685755; *Nelson v. Wright*, No. 9:10-CV-997, 2011 WL 6031392 (N.D.N.Y. Oct. 20, 2011) (Treece, M.J.), *report and recommendation adopted*,  2011 WL 6030994 (N.D.N.Y. Dec. 5, 2011) (Sharpe, J.).

earlier folly, section 1915(g) provides that a prisoner who is in "imminent

danger of serious physical injury" may avoid application of the three strikes

rule of section 1915(g).  *See* 28 U.S.C. § 1915(g); *see also Malik v.*

*McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002).  In accordance with this

exception, an inmate who has had three prior "strikes" but nonetheless

wishes to commence a new action *in forma pauperis* must show that he or

she was under imminent danger at the time of filing; the exception does not

provide a basis to avoid application of the three strikes on the basis of past

harm.  *Malik*, 293 F.3d at 562-63; *see also Chavis,* 618 F.3d at 169.   An

inmate who claims the benefit of this exception must also show that the

danger faced rises to the level of exposure to a "serious physical injury."  28

U.S.C. § 1915(g).  The imminent danger claimed by the inmate, moreover,

must be real, and not merely speculative or hypothetical.  *Johnson v. Barney*,

No. 04 Civ. 10204, 2005 WL 2173950, at *1-2 (S.D.N.Y. Sept. 6, 2005)

(finding that inmate's allegation of danger at facility he was not housed at, but

may pass through at infrequent occasions in the future, does not establish

imminent danger).

    For a three-strikes litigant to qualify for the imminent danger exception,

his or her complaint "must reveal a nexus between the imminent danger it

alleges and the claims it asserts." *Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009).  When determining whether the requisite relationship is present a court must examine "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." *Id.* at 299 (emphasis in original).

The term "serious physical injury," as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death[.]" *Ibrahim*, 463 F.3d at 7.  In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney*, 281 F.3d 709, 710 (8th Cir. 2002).  Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin*, 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim*, 463 F.3d at 6-7; and patterns of harassment from corrections officers, heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini*, 352 F.3d 328, 330-31

13

(7th Cir. 2003) (finding upon reaching the merits, however, that plaintiff's

complaint did not state an Eighth Amendment claim).

Plaintiff's eligibility for IFP status turns on whether he can establish that

he faced imminent danger of serious physical injury on December 28, 2010,

when this action was filed.  *Chavis*, 618 F.3d at 169-70.  Any potential claim

of imminent danger in this case, however, must be rejected not only because

of the rejection of the same claims previously made by plaintiff in this district,

but also based upon the record now before the court.

Plaintiff's ongoing left leg condition has been the subject of several

lawsuits filed by plaintiff in this district as well as others within the Second

Circuit, and a number of courts have now concluded that his leg condition

does not rise to the level of imminent danger.  As my esteemed colleague

Magistrate Judge David E. Homer has observed,

> Nelson's continued complaints of infection in his leg
> have previously been held insufficient to establish an
> imminent danger.  *See Nelson v. Scoggy*, No.
> 06–CV–1146 (NAM/DRH), 2009 WL 5216955, at *2–4
> (N.D.N.Y. Dec.30, 2009) (dismissing the case since
> Nelson had received adequate medical care for his
> leg and the failure of the wound to heal was the result
> of Nelson's own acts of interference with the
> treatment provided and his self-mutilation); *see also
> Cash v. Berstein*, No. 09–CV–1922 (BSJ/HBP), 2010
> WL 5185047, at *3 (S.D.N.Y. Oct.26, 2010) *aff'd*,
> 2010 WL 5222126 (S.D.N.Y. Dec.12, 2010) (Dkt. No.

14

> 18–1 at 6–11).  Nelson alleges imminent danger in
> part because of the inadequate care resulting in a
> gangrenous condition.  As continued complaints of
> infection and gangrene, in light of the prior dismissal
> in *Nelson v. Scoggy*, are insufficient to establish
> imminent danger, such contentions cannot presently
> be used to help Nelson escape the three-strikes
> provision.

*Nelson v. Warren*, 2011 WL 7445581, at * 4 (footnote omitted).[9]  In that case

plaintiff similarly complained of the medical care he received for his leg

condition while confined to Marcy and asserted that he was exposed

imminent serious physical harm as a result thereof, allegations that were

rejected by both Magistrate Judge Homer and Judge Suddaby in revoking

plaintiff's IFP status in that case and issuing a bar order.

In *Nelson v. Wright*, No. 9:10-CV-0997 (N.D.N.Y. filed Aug. 18, 2010),

filed the very next day after the *Warren* case was commenced, Nelson again

complained about the medical treatment he was receiving at Marcy for his left

leg ulcer, also alleging that he was in imminent danger of serious physical

injury due to infection and deep vein thrombosis of the left leg.  *See id.* at

---

[9]      Judge Homer also observed that "[i]t appears that [Nelson] uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint ... the ... DIN[ ] assigned to [plaintiff] by ... [DOCS] is 94–B–0694 ... [which] is [also] assigned to Dennis Nelson." *Nelson v. Warren*, 2011 WL 7445581, at * 4 n.3 (quoting *Cash v. Berstein*, No. 09–CV–1922 (BSJ/HBP), 2010 WL 5185047, at *3 n. 3 (S.D.N.Y. Oct. 26, 2010)).

Dkt. No. 1.  In a report and recommendation relating to the defendants'

motion to dismiss the complaint in that action Magistrate Judge Randolph F.

Treece, another distinguished colleague, observed that attachments to

plaintiff's complaint indicated that

> Mr. Nelson is a diabetic with an ulcer on his lower
> extremity. He also has a DVT of his lower extremity.
> Mr. Nelson has received medical evaluation and
> treatment for these conditions. However, progress
> toward improvement of these conditions has been
> hampered by noncompliance with recommended
> treatments.
>
> DVT is treated with warfarin and regular monitoring of
> blood work. He has refused these treatments at times.
> As well, at times he refuses dressing changes for the
> ulcer on his leg. He has been noted to tamper with the
> dressing on the ulcer and may be getting external
> contamination from self inoculation with feces.
>
> The medical staff at Marcy are attending to Mr.
> Nelson's medical problems in spite of his
> noncompliance with treatment recommendations and
> undermining of his care. He does not have gangrene
> of the extremity, but he is at risk of such.

*Nelson v. Wright*, 2011 WL 6031392, at *3. In view of the foregoing, Judge

Treece stated that "[a] prisoner who declines medical treatment cannot turn

around and sue the medical professional whose judgment the prisoner has

questioned and even defied."  *Id.* (citing, *inter alia*, *Jones v. Smith*, 784 F.2d

149, 151–52 (2d Cir.1986) (affirming lower court ruling that a prisoner who

16

declines medical treatment cannot establish an Eighth Amendment claim for medical deliberate indifference)) (other citations omitted).  Judge Treece therefore recommended dismissal of plaintiff's amended complaint on this basis, and on the ground that plaintiff failed to demonstrate the personal involvement of the defendant in the alleged constitutional violation, a recommendation that was adopted in full by Chief District Judge Gary L Sharpe.  2011 WL 6030994.

       After careful review of the record before the court, I have concluded that there is nothing to suggest that plaintiff's leg ulcer condition had materially deteriorated by the time that he filed this lawsuit, just four months later, and therefore find no basis to disagree with those judges who have previously determined that Nelson's chronic leg wound is insufficient to support the imminent danger exception. Indeed, a review of plaintiff's medical records reveals that during the time that he was housed at Marcy, Nelson received daily medical attention for his left leg ulcer.  Although the condition of the wound varied at times, the record shows that the principal cause of such variance was plaintiff's frequent refusal of the prescribed treatment as well as his self mutilation.  In the month immediately preceding plaintiff's filing of this action, he was prescribed and received daily whirlpool treatment in

addition to the daily change of the wound dressing.  Despite plaintiff's refusal

of dressing changes on three separate occasions during the month of

December 2010, as well as his refusal to fully participate in the prescribed

whirlpool treatment on at least three occasions, improvement of the

previously observed necrosis was noted in his AHR on December 15, 2010.

Although plaintiff's complaint alleges that he was suffering an imminent threat

of serious physical harm due to his leg condition, Nelson refused treatment

again on December 29, 2010, the day after filing of this lawsuit, and there is

no medical condition posing imminent danger to his health noted in his

medical chart on December 30, 2010 upon his transfer out of Marcy into

another prison facility, or at any time within the following months.

In sum, a careful review of the record now before the court, even when

viewed in a light most favorable to the plaintiff, discloses no basis for

concluding at the time this action was filed he was exposed to imminent

danger of serious physical injury.  Plaintiff has therefore failed to demonstrate

his entitlement to this narrow exception to the PLRA's three-strike statutory

provision.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff, a persistent litigant in this and other courts, brings this action

to challenge defendants' failure to provide adequate medical treatment for his chronic left leg condition.  A review of the plaintiff's litigation history reveals that without dispute, he has incurred three or more strikes falling within 28 U.S.C. § 1915(g).  The record further fails to disclose a basis to conclude that at the time this action was filed he was in imminent danger of serious physical injury, even under the arguably relaxed standard announced by the Second Circuit in *Chavis*.  A review of plaintiff's litigation history and his conduct during the course of this action makes it clear that to the plaintiff, litigation is a form of recreation of the type which the PLRA's three strikes provision was intended to curb. Plaintiff's repeated filing of actions in this and other courts not only unduly harasses prison officials, but burdens already over-taxed court resources and those of the Office of the Attorney General, which is called upon to defend against such claims.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that plaintiff's *in forma pauperis* status be REVOKED, and he be required to pay the required filing fee within thirty days of the issuance of an order adopting this report and recommendation, and that his complaint be dismissed without further order of the court in the event of his failure to pay the statutory $350 filing fee within that time period; and it

is further hereby

RECOMMENDED, that the substantive portions of defendants'
summary judgment motion (Dkt. No. 25) be held in abeyance, and that in the
event the plaintiff does pay the required filing fee, that the matter be returned
to me for consideration of the remaining portions of defendants' motion.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge
written objections to the foregoing report.  Such objections must be filed with
the clerk of the court within FOURTEEN days of service of this report.
FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE
APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72;
*Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this
report and recommendation upon the parties in accordance with this court's
local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      August 13, 2012
            Syracuse, NY



Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Anthony G. GILL, Plaintiff,
v.
Chris PIDLYPCHAK, Correction Officer and T.G.
Dygert, Correction Officer, Defendants.
No. 902-CV-1460 (FJS/RFT).

Dec. 19, 2006.
Anthony G. Gill, of counsel, Comstock, NY, Plaintiff, Pro
Se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Douglas Goglia, Esq., Asst. Attorney General, of
counsel, Albany, NY, for Defendants.

### *DECISION AND ORDER*

FREDERICK J. SCULLIN, JR., S.J.

**\*1** The above-captioned matter having been presented
to me by the Report-Recommendation of Magistrate Judge
Randolph F. Treece filed November 20, 2006 and the
Court having reviewed the Report-Recommendation and
the entire file in this matter, and no objections to said
Report-Recommendation having been filed, it is hereby

**ORDERED,** that the Report-Recommendation of
Magistrate Judge Randolph F. Treece filed November 20,
2006 is **ACCEPTED** in its entirety, for the reasons stated
therein; and it is further

**ORDERED,** that the Order granting Gill's IFP status
is **VACATED;** and it is further

**ORDERED,** that Defendants' Letter-Motion seeking
dismissal of Gill's Complaint pursuant to 28 U.S.C. §
1915(g) is **GRANTED** unless Gill pays the filing fee of
$150.00 within thirty days of this final order.

**IT IS SO ORDERED.**

RANDOLPH F. TREECE, United States Magistrate
Judge.

### *REPORT-RECOMMENDATION and ORDER*
### I. INTRODUCTION

Pro se Plaintiff Anthony Gill brings this civil action
pursuant to 42 U.S.C. § 1983, alleging Defendants
violated his civil rights while he was incarcerated at the
Auburn Correctional Facility. Dkt. No. 1, Compl. [FN1]
Specifically, Gills alleges Defendants Pidlypchak and
Dygert filed false misbehavior reports against him and
harassed him in retaliation for the filing of numerous
institutional grievances against them and a civil lawsuit
against Pidlypchak for smoking violations. Compl., Pl.'s
Statement of Facts.

> FN1. On December 23, 2002, Defendants filed a
> Motion to Dismiss Gill's Complaint pursuant to
> FED.R.CIV.P. 12(b)(6) for failure to state a
> claim upon which relief can be granted. Dkt. No.
> 6, Mot. to Dismiss. By Order of the Honorable
> Joseph M. Hood, United States District Judge for
> the Eastern District of Kentucky sitting by
> designation, Defendants' Motion was granted
> dismissing Gill's complaint with prejudice. Dkt.
> No. 17, Decision & Order, dated July 28, 2003.
> Judgment was entered on August 1, 2003 and
> Gill appealed. Dkt. Nos. 18 & 19, Notice of
> Appeal, dated Aug. 4, 2003. The Second Circuit
> affirmed the District Court's dismissal of Gill's
> Eighth Amendment claim, but vacated the
> Judgment of the District Court dismissing Gill's
> First Amendment claim and remanded the action
> back to the District Court. *Gill v. Pidlypchak,*
> 389 F.3d 379 (2d Cir.2004).

Presently before the Court is Defendants'
Letter-Motion requesting an order revoking Gill's *in forma
pauperis* (IFP) status and conditionally dismissing this
action pursuant to 28 U.S.C. § 1915(g) pending Gill's
prompt payment of the statutory filing fee of $150.00. [FN2]
Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1.
Gill opposes the motion. Dkt. No. 38, Pl.'s Lt.-Resp.,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

dated July 21, 2006. For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

> FN2. Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight." Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

## II. DISCUSSION

### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis*. 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2).

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (**PLRA**) of 1996, which renders several restrictions on a **prisoner's** ability to exploit the justice system. One such mechanism is the so-called "three **strikes** rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been **dismissed** as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.*

In recognizing the legitimate government interests fostered by the **PLRA** amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to **filing lawsuits**. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to **file** actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to **file** suit at taxpayers' expense. *See Anderson v. Coughlin,* 700 F.2d 37, 42 (2d Cir.1983) (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973).

> *Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases **count** towards the three **strikes** rule, a court may look to **dismissals** which predated the enactment of the **PLRA**. *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000). The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the **prisoner's** case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Gill's "Three Strikes"

As noted by the Second Circuit, Gill "is no stranger ... to the federal courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). He "has **commenced** at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta,* 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n. 2 (N.D.N.Y.); has **filed** at least thirty-nine (39) different **lawsuits** in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[FN3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

entitled to "the special solicitude afforded [to] *pro se* litigants [.]" *Gill v. Riddick,* 2005 WL 755745, at *2 (N.D.N.Y. Mar. 31, 2005).

> FN3. *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) *(habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

When Gill commenced this action on November 20, 2002, he had already acquired at least three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v. Accettulli,* 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center,* 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre,* 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11); and *Gill v. Padilla,* 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11).[FN4] Defs.' Lt.-Mot. at p. 2.

> FN4. In their Letter-Motion, Defendants' assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n. 4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, *"Gill v. Anderson* and *Gill v. Pflueger* [,] ... were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

## C. Application of *Snider v. Melindez* and *DeLeon v. Doe*

**\*3** Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Second Circuit in *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999) and clarified in *DeLeon v. Doe,* 361 F.3d 93 (2d Cir.2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w[h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider.*" Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez,* the Second Circuit held that the "three strikes rule" was intended to apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez,* 199 F.3d at 111.[FN5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily render a determination on the merits as, for example, a dismissal for frivolousness would. *See id.* at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)).

> FN5. In *Snider,* the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

In *DeLeon v. Doe,* the Second Circuit, in upholding its ruling in *Snider,* reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).' " *Id.*

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First, although *Snider* is clear in its application to those cases dismissed on the merits, the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

**\*4** Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g) ] is properly considered ***at the time an action is dismissed.***" *Id.* (citing *Snider v. Melindez,* 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these **strikes** one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at a proper time-qualify as **strikes** under the terms of § 1915(g)." [FN6] *Id* .

> FN6. The Second Circuit in *DeLeon* based its holding on its rationale in *Snider,* which reads:
>
> The designation of **strikes** has no practical consequences until a defendant in a **prisoner's lawsuit** raises the contention that the **prisoner's** suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three **strikes**. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three **strikes**. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

*DeLeon v. Doe,* 361 F.3d at 95 (quoting *Snider v. Melindez,* 199 F.3d at 115).

The Second Circuit also stated that "[c]ontemporanous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id.* (quoting *Snider v. Melindez,* 199 F.3d at 115, n. 4).

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for purposes of the "three strikes rule."

Although the Southern District in deciding *Accettulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accettulli,* 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325); *Gill v. Anna M. Kross Center,* 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p. 2 (S.D.N.Y.) (citing *Neitzke v. Williams,* 490 U.S. at 325). Additionally, in *Kross,* the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accettulli* and *Kross* cases "were **dismissed** due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the dismissals of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "**strikes**" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were **dismissed** by the Northern District for failure to prosecute pursuant to Rule 11 of the Federal Rules of Civil Procedure.[FN7] By his own admission, Gill concedes that these two cases were **dismissed** pursuant to FED.R.CIV.P. 11. Irrespective of specific language used in the District's Decisions and Orders **dismissing** these actions, we find that a Rule 11 **dismissal** is a **dismissal** on the merits. Therefore, these two cases would also each qualify as "**strikes**" against the Plaintiff.

> FN7. A history of failure to prosecute is akin to the **filing** of a frivolous claim.

From the discussion and analysis above, it is clear that these types of **dismissals** are precisely what Congress had in mind when it enacted the **PLRA,** hoping to discourage and limit the amount of *frivolous* **lawsuits** brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "**strikes**" at the time he **commenced** the present action.

### D. Exception to the "Three Strikes Rule"

*5 Notwithstanding prior **dismissals,** an inmate can overcome the "three **strikes** rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002) ( "[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

### E. Revoking Gill's IFP Status

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier proceedings, specifically in their Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006.[FN8] Pl.'s Lt.-Resp. at p. 4.

> **FN8.** Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge,* 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998)).

In light of the foregoing, it is recommended that the Order granting IFP status to Gill be **vacated** and that Gill's Complaint be dismissed unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Order granting Gill's IFP status (Dkt. No. 4) be VACATED; and it is further

**RECOMMENDED** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be **GRANTED** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court; and it is further

**\*6 ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72, 6(a) & 6(e).

N.D.N.Y.,2006.

Gill v. Pidlypchak
Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2012 WL 685755 (N.D.N.Y.)

(Cite as: 2012 WL 685755 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Dennis NELSON, Plaintiff,
v.
Elizabeth WARREN, Nurse, Marcy C.F., Defendant.
No. 9:10–CV–0990 (GTS/DRH).

March 2, 2012.
Dennis Nelson, Romulus, NY, pro se.

*MEMORANDUM–DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.
   **\*1** Currently before the Court, in this *pro se* prisoner action filed by Dennis Nelson ("Plaintiff") against Marcy Correctional Facility Nurse Elizabeth Warren ("Defendant"), are the following: Defendant's first motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6); Defendant's second motion to dismiss, pursuant to 28 U.S.C. § 1915(g); United States Magistrate Judge David R. Homer's Report–Recommendation recommending that Defendant's first motion to dismiss be denied but that her second motion to dismiss be granted; and Plaintiff's Objection to the Report–Recommendation. (Dkt.Nos.16, 17, 21, 22.) For the reasons set forth below, Magistrate Judge Homer's Report–Recommendation is adopted; Defendant's first motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), is denied; her second motion to dismiss, pursuant to 28 U.S.C. § 1915(g), is granted; and Plaintiff Complaint shall be dismissed in its entirety without further Order of this Court, unless he pays the Court's filing fee of $350.00 within thirty (30) days of this Decision and Order.

**I. RELEVANT BACKGROUND**

   Because this Decision and Order is intended primarily for the review of the parties, the Court will not recite in detail Plaintiff's claims and factual allegations, or the procedural history of the action, except where necessary below in Part III of this Decision and Order.

**II. APPLICABLE LEGAL STANDARDS**

**A. Standard of Review Governing a Report–Recommendation**

   When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y.L.R. 72.1(c).[FN1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence ...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[FN2]

   FN1. *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

   FN2. *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony

Slip Copy, 2012 WL 685755 (N.D.N.Y.)

(Cite as: 2012 WL 685755 (N.D.N.Y.))

when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[FN3] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[FN4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[FN5]

> FN3. *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).

> FN4. *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

> FN5. *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**\*2** After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

**B. Legal Standard Governing Dismissal Based on Failure to State a Claim**

Magistrate Judge Homer correctly recited the legal standards governing motions to dismiss for failure to state a claim in his Report–Recommendation and Order. (Dkt. No. 21, at Part II.A.) As a result, these standards are incorporated by reference in this Decision and Order, which (again) is intended primarily for the review of the parties.

The Court would add only a few words regarding what documents may be considered when construing the pleading sufficiency of a complaint (given that Plaintiff's

Slip Copy, 2012 WL 685755 (N.D.N.Y.)

(Cite as: 2012 WL 685755 (N.D.N.Y.))

Complaint in this action attaches two grievance documents): (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background for the case.[FN6]

> FN6. *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L–7 Designs, Inc. v. Old Navy, LLC,* No. 10–573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.R.Civ.P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background for the case); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

**C. Legal Standard Governing Dismissal Under the Three Strikes Provision**

In his Report–Recommendation and Order, Magistrate Judge Homer correctly recited the legal standards governing dismissals under the "three strikes" provision of 28 U.S.C. § 1915(g). (Dkt. No. 21, at Part II.B). As a result, these standards are incorporated by reference in this Decision and Order, which (again) is intended primarily for the review of the parties.

**III. ANALYSIS**

On December 12, 2011, Magistrate Judge Homer issued a Report–Recommendation recommending that Defendant's first motion to dismiss (for failure to state a claim) be denied but her second motion to dismiss (based on the "three strikes" provision of 28 U.S.C. § 1915[g] ) be granted. (Dkt. No. 21, at Part II.) More specifically, Magistrate Judge Homer recommended that, because Plaintiff had acquired at least three "strikes" before he filed this action, and because he has not alleged facts plausibly suggesting that he was under imminent danger of serious physical injury when he filed this action, the *in forma pauperis* status (which he was granted improvidently on November 24, 2010) be vacated, Plaintiff's Complaint be dismissed as to all claims, unless he pays the Court's filing fee of $350.00 within thirty (30) days of this Decision and Order. (*Id.*) In addition, Magistrate Judge Homer recommended that Plaintiff "be **BARRED** from filing any [*in forma pauperis* ] complaints in this district unless he is under imminent danger of serious physical injury." (*Id.* at 11.)

On December 22, 2011, Plaintiff filed his timely Objection to the Report–Recommendation. (Dkt. No. 22.) In his Objection, Plaintiff argues that "I am in serious physical injury [because] I have an infection called Merca[:] the deadly infection that can kill you if not treated right." (*Id.* at ¶ 4.) In addition, he provides what he calls a "graphic of [his] left leg," consisting of a kidney-shaped balloon contains the words "Merca" and "Whole Left Leg," surrounded by scribbles labeled as an "infection." (*Id.* at 2.) Finally, Plaintiff states that "I have witnesses that can show you and tell you what my left looks lik[e]." (*Id.*)

**\*3** Under the circumstances, the Court has difficulty construing Plaintiff's Objection (which is premised solely on his new allegation regarding MRSA) as raising a *specific challenge* to that portion of Magistrate Judge

Slip Copy, 2012 WL 685755 (N.D.N.Y.)

(Cite as: 2012 WL 685755 (N.D.N.Y.))

Homer's Report–Recommendation regarding Plaintiff's Complaint (which is devoid of any allegation regarding MRSA) as failing to allege facts plausibly suggesting an imminent danger of serious physical injury. Simply, it would be both anachronistic and a frustration of the purpose of the Magistrates Act to construe Plaintiff's MRSA allegation as "challenging" a Report–Recommendation that was issued without the benefit of that MRSA allegation. In any event, because such a construction would not change the outcome of this Decision and Order, the Court will, for the sake of brevity, liberally construe Plaintiff's Objection as raising a specific challenge to that portion of Magistrate Judge Homer's Report–Recommendation regarding Plaintiff's Complaint as failing to allege facts plausibly suggesting an imminent danger of serious physical injury.

After carefully reviewing all of the papers in this action, including the "imminent danger" portion of Magistrate Judge Homer's Report–Recommendation, the Court concludes that the "imminent danger" portion of the Report–Recommendation is thorough, well-reasoned and correct. (Dkt. No. 21, at 8–11.) Magistrate Judge Homer employed the proper legal standards, accurately recited the facts, and reasonably applied the law to those facts. (*Id.*) As a result, the Court adopts the "imminent danger" portion of the Report–Recommendation on *de novo* review, for the reasons stated therein. (*Id.*)

In addition, the Court adopts the other portions of the Report–Recommendation under the less-rigorous clear-error standard of review, given that Plaintiff has not, in his Objection, specifically challenged those other portions (including Magistrate Judge Homer's construction of Plaintiff's claims, allegations and arguments, and Magistrate Judge Homer's finding that Plaintiff had acquired at least three "strikes" before filing this action). (*Id.* at 1–8.)

The Court would add only four points. First, as Magistrate Judge Homer correctly stated in his Report–Recommendation, in determining a plaintiff's entitlement to invoke the "imminent danger" exception, the Second Circuit has ruled that imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged.[FN7] Here, Plaintiff

filed his Complaint on August 7, 2010. (Dkt. No. 1, at 6.) [FN8] As a result, the factual allegations regarding imminent danger should regard that approximate time period. The problem is that Plaintiff's late-blossoming allegation regarding "gangegreene" (asserted in his response to Defendant's first motion) arise from a condition experienced seven months after the date of filing of Plaintiff's Complaint. (Dkt. No. 17 [dated March 8, 2011].) Moreover, Plaintiff's late-blossoming allegations regarding MRSA (asserted in his Objections to Magistrate Judge Homer's Report–Recommendation) arise from a condition experienced nearly seventeen months after the date of filing of Plaintiff's Complaint. (Dkt. No. 22, at 3 [undated but showing postage date of Dec. 21, 2011].) As a result, even if these allegations could be liberally construed as effectively amending the allegations of Plaintiff's Complaint,[FN9] they would not plausibly suggest that Plaintiff was in imminent danger of serious physical injury on August 7, 2010.

> **FN7.** *See Chavis v. Chappius,* 618 F.3d 162, 169–70 (2d Cir.2010) ( "An imminent danger is not one that has dissipated by the time a complaint is filed ...; rather it must be one existing at the time the complaint is filed.") [internal quotation marks and citations omitted]; *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir.2010) ("The [imminent danger] exception only applies to danger existing at the time the complaint is filed."); *Pettus v. Morgenthau,* 554 F.3d 293, 296 (2d Cir.2009) ("[A] three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed."); *Polanco v. Hopkins,* 510 F.3d 152, 156 (2d Cir.2007) (per curiam) ("This argument is simply an invitation to overturn our time-of-filing interpretation in *Malik,* an invitation that we decline."); *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002) ("Because § 1915(g) uses the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger must exist at the time the complaint is filed.").

> **FN8.** Under the "prison mailbox rule," the date of filing of a *pro se* prisoner civil rights action is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 685755 (N.D.N.Y.)

(Cite as: 2012 WL 685755 (N.D.N.Y.))

deemed to be the date that the prisoner-plaintiff is presumed to have handed his complaint to a prison guard for mailing, which is the date that the complaint was signed. *See Shaw v. Superint., Attica Corr. Facility,* 03–CV–0610, 2007 WL 951459, at *3 n. 3 (N.D.N.Y. March 28, 2007) (McCurn, J.) (habeas corpus proceeding) [citations omitted]; *Garraway v. Broome County, N.Y.,* 03–CV–0681, 2006 WL 931729, at *3–4 (N.D.N.Y. Apr.7, 2006) (McAvoy, J.) (prisoner civil rights action) [citation omitted].

FN9. In the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint-to the extent those papers are consistent with the allegations in the complaint. *See Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n. 1 (2d Cir.1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v.Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004) (Hurd, J.).

**\*4** Second, the Court need not *sua sponte* afford Plaintiff an additional opportunity to allege facts plausibly

suggesting imminent danger because it has already construed his response to Defendant's first motion, his response to Defendant's second motion, and his Objections as effectively amending the allegations of his Complaint, and finds them together to be insufficient to allege facts plausibly suggesting that he was in imminent danger of serious physical injury on August 7, 2010.

Third, the bar order recommended by Magistrate Judge Homer (assuming it is interpreted to apply only to future *in forma pauperis* civil actions by Plaintiffs *as a prisoner)* is one that is expressly authorized, and indeed, required by statute. *See* 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action [*in forma pauperis* ] ... if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."). As a result, the Court need not issue an Order to Show Cause before reaffirming the existence of that bar order in this Decision and Order.

Fourth and finally, Plaintiff is advised that, if he does pay the Court's filing fee within thirty days (as required by this Decision and Order), then he will thereafter be *sua sponte* directed to show cause as to why his Complaint should not be dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for alleging facts that can only be liberally construed as plausibly suggesting that he did not appeal the denial of his grievance all the way to up the New York State Department of Corrections and Community Services' Central Office Review Committee, and receive a response from that Committee (or acquire cause to be excused from having to do so), before filing this action on August 7, 2010. (*See* Dkt. No. 1, at 2, 9 [alleging that the furthest he pursued his grievance was through an "appeal to superintendent," and indicating that his grievance was denied by the Inmate Grievance Resolution Committee on July 20, 2010].) [FN10]

FN10. *See 2* 8 U. S.C. § 1915A(b); *Wachtler v. Herkimer Cnty.,* 35 F.3d 77, 82 (2d Cir.1994); *Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 685755 (N.D.N.Y.)

(Cite as: 2012 WL 685755 (N.D.N.Y.))

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Homer's Report–Recommendation (Dkt. No. 21) is **_ACCEPTED_** and **_ADOPTED;_** and it is further

**ORDERED** that Defendant's first motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6) (Dkt. No. 16), is **_DENIED;_** and it is further

**ORDERED** that Defendant's second motion to dismiss, pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 18), is **_GRANTED;_** and it is further

**ORDERED** that Plaintiff's _in forma pauperis_ status is hereby **_REVOKED_** as having been improvidently granted; and it is further

**ORDERED** that Plaintiff Complaint (Dkt. No. 1) shall be **_DISMISSED_** in its entirety without further Order of this Court, unless he pays the Court's filing fee of **THREE HUNDRED FIFTY DOLLARS ($350.00)** within **THIRTY (30) DAYS** of the date of this Decision and Order; and it is further

**\*5 ORDERED** that _in no event shall Plaintiff, as a prisoner, bring a future civil action in forma pauperis in this District unless he is under imminent danger of serious physical injury._

N.D.N.Y.,2012.

Nelson v. Warren
Slip Copy, 2012 WL 685755 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 4401874 (N.D.N.Y.)

(Cite as: 2008 WL 4401874 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Dennis NELSON, Plaintiff,
v.
Mr. SCOGGY, Counselor; Ms. L. Gillis, Dept. of BHU;
Ms. Fraisher, Doctor; R. Quinn, C.O., Defendants.
No. 9:06-CV-1146 (NAM)(DRH).

Sept. 24, 2008.
Dennis Nelson, Great Meadow Correctional Facility,
Comstock, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General, State of New
York, Adele M. Taylor-Scott, Esq., Assistant Attorney
General, Albany, NY, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Hon. NORMAN A. MORDUE, Chief Judge.
**BACKGROUND**
**\*1** In this action under 42 U.S.C. § 1983, plaintiff, a
New York State prison inmate, alleges that prison officials
have been deliberately indifferent to his serious medical
needs. Defendants move (Dkt. No. 23) for revocation of
plaintiff's *in forma pauperis* ("IFP") status and for
conditional dismissal of his complaint under 28 U.S.C. §
1915(g) ("section 1915(g)"), unless he prepays in full the
applicable filing fee.

Section 1915(g), concerning eligibility for IFP status,
provides:

> In no event shall a prisoner bring a civil action or appeal
> a judgment in a civil action or proceeding under this
> section if the prisoner has, on 3 or more prior occasions,
> while incarcerated or detained in any facility, brought an
> action or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious,
> or fails to state a claim upon which relief may be
> granted, unless the prisoner is under imminent danger of

serious physical injury.

Defendants argue that the action is based not on harm
impending at the time of the complaint but rather on harms
which have already occurred; thus plaintiff is not under
imminent danger of serious physical injury and is not
eligible for IFP status. *See Malik v. McGinnis,* 293 F.3d
559, 563 (2d Cir.2002). This is the sole issue on the
motion. Plaintiff opposes the motion (Dkt. No. 30).

Defendants' motion was referred to United States
Magistrate Judge David R. Homer pursuant to 28 U.S.C.
§ 636(b)(1)(B) and Local Rule 72.3(c). In his Report and
Recommendation (Dkt. No. 32), Magistrate Judge Homer
recommends that the motion be granted on the ground that
three or more inmate civil rights actions previously
brought by plaintiff have been dismissed on the merits, and
plaintiff makes no showing that he is in imminent
danger of serious physical injury so as to qualify for IFP
status under the exception in section 1915(g).

Plaintiff objects (Dkt. No. 33) to the Report and
Recommendation. Pursuant to 28 U.S.C. § 636(b)(1)(C),
this Court reviews *de novo* those parts of a report and
recommendation to which a party specifically objects.
Where only general objections are filed, the Court reviews
for clear error. *See Brown v. Peters,* 1997 WL 599355,
\*2-\*3 (N.D.N.Y.), *aff'd without op.,* 175 F.3d 1007 (2d
Cir.1999). Failure to object to any portion of a report and
recommendation waives further judicial review of the
matters therein. *See Roldan v. Racette,* 984 F.2d 85, 89
(2d Cir.1993).

The Court adopts Magistrate Judge Homer's recitation
of the facts and law. For the reason set forth below,
however, the Court does not adopt Magistrate Judge
Homer's recommendation that plaintiff's IFP status be
revoked and his complaint conditionally dismissed unless
he prepays the filing fee.

**DISCUSSION**

Plaintiff does not deny that three or more inmate civil

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4401874 (N.D.N.Y.)

(Cite as: 2008 WL 4401874 (N.D.N.Y.))

rights actions previously brought by him have been dismissed on the ground that they are frivolous, malicious, or fail to state a claim upon which relief may be granted. The issue before the Court on this motion is whether plaintiff has alleged that he is under imminent danger of serious physical injury so as to benefit from the exception to section 1915(g). Accordingly, the Court reviews plaintiff's submissions.

**\*2** In the initial complaint (Dkt. No. 1), filed September 22, 2006, plaintiff alleges that on August 28, 2006, defendants interfered with his medical treatment and that on August 29, 2006, he was told he would lose his left leg to gangrene. He seeks monetary damages. He also, however, asks the Court to order that he be sent to a medical facility such as Coxsackie Correctional Facility "where [he] can get some better help[,]" or to Eastern Correctional Facility where he will be "in a wheelchair facility."

The amended complaint (Dkt. No. 5), filed November 29, 2006, refers to various past denials of medical care for his leg and asks for money damages. It also states that he asked Ms. Fraisher, apparently a physician, to "help [him] with his medical issue" because he has developed gangrene and cellulitis "within 4 month[s] of walking on a bad leg that drains every day and night and she tells me she can't help me." He adds: "I am in serious harm if I don't get the right treatment[;] the ganegreene [*sic* ] will reach my heart and kill me [.]" <u>FN1</u>

> <u>FN1.</u> Also, in a submission filed November 16, 2007 (Dkt. No. 26) he claims that he has gangrene, the leg is swollen and discolored, that he has discomfort walking and sleeping, and he is suffering from pain. He wishes to "avoid it from spreading up and down [his] lower left leg." This submission was stricken from the docket (Dkt. No. 27) due to plaintiff's failure to indicate that he served the submission on opposing counsel.

In his opposition (Dkt. No. 30) to defendants' motion, plaintiff again alleges that the defendants interfered with his medical treatment and asks to be placed in Central New York Psychiatric Center to get "better treatment" for both his medical and mental health issues. Otherwise, he

says, he needs "adequate medical care at Albany Medical Center." He attaches copies of photographs of his leg; while they are unclear, there appears to be a large area of injury or infection on the leg.

In his objection (Dkt. No. 33) to Magistrate Judge Homer's Report and Recommendation (Dkt. No. 32) plaintiff writes that he is in imminent danger of serious physical injury due to a "non-healing [chronic] leg ulcer" that is gangrenous. Thus, plaintiff claims that, at least as of September 6, 2008, the date of the objection, his complaints about his leg condition have not been resolved.<u>FN2</u>

> <u>FN2.</u> This Court notes also that over nine months ago, it granted a section 1915(g) motion for vacatur of IFP status and conditional dismissal in another action by plaintiff relating to his leg. After noting that three or more inmate civil rights actions previously brought by plaintiff had been dismissed on the merits, the Court noted that, according to plaintiff, the hospital in his facility had scheduled surgery by an outside specialist to amputate his leg from the knee down, and that the sole remaining relief plaintiff sought was an order directing that the surgery be performed at Albany Medical Center. *Nelson v. Lee,* 2007 WL 4333776, *1 (N.D.N.Y. Dec. 5, 2007); *see also Nelson v. Nesmith,* 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008).

The Court is aware of plaintiff's lengthy litigation history and his predilection for filing meritless lawsuits. It is also true, as Magistrate Judge Homer observed, that plaintiff's present action appears to be directed primarily towards recovering money damages for past harm. Reading plaintiff's submissions most liberally, however, this Court finds that, in addition to monetary damages, plaintiff seeks some type of injunctive relief to address the long-standing problem with his leg. Further, although his request for injunctive relief appears to be primarily motivated by his desire to select the facility where he will be treated, his submissions may be read more broadly to allege that he is in urgent need of treatment for a very serious medical condition.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4401874 (N.D.N.Y.)

(Cite as: 2008 WL 4401874 (N.D.N.Y.))

On *de novo* review, construing the submissions in the light most favorable to plaintiff, the Court finds plaintiff has alleged imminent danger of serious physical injury sufficient to warrant denial of defendants' motion for revocation of plaintiff's *in forma pauperis* ("IFP") status and for conditional dismissal of his complaint under 28 U.S.C. § 1915(g), unless he prepays in full the applicable filing fee.

### CONCLUSION

**\*3** It is therefore

ORDERED that the Report and Recommendation (Dkt. No. 32) of United States Magistrate Judge David R. Homer is adopted in part and rejected in part in accordance with this Memorandum-Decision and Order; and it is further

ORDERED that defendants' motion (Dkt. No. 23) is denied.

IT IS SO ORDERED.

N.D.N.Y.,2008.

Nelson v. Scoggy
Not Reported in F.Supp.2d, 2008 WL 4401874 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 6031392 (N.D.N.Y.)

(Cite as: 2011 WL 6031392 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Dennis NELSON, Plaintiff
v.
Lester WRIGHT, Medical Chief; Dr. John Doe, Marcy
Correctional Facility, Defendants.
Civil No. 9:10–CV–997 (GLS/RFT).

Oct. 20, 2011.
Dennis Nelson, Elmira, NY, pro se.

### *REPORT–RECOMMENDATION AND ORDER*

RANDOLPH F. TREECE, United States Magistrate
Judge.

#### I. BACKGROUND

**\*1** This civil rights action originated on August 18,
2010, with the filing of a Complaint. Dkt. No. 1, Compl.
In his *pro se* Complaint, Plaintiff named as Defendants
Lester Wright, Chief Medical Officer, and Dr. John Doe.
On March 19, 2011, Defendant Wright moved, pursuant
to Federal Rule of Civil Procedure 12(b)(6), for dismissal
of the action. Dkt. No. 16. Despite being granted an
extension of time, Plaintiff did not oppose the Motion. On
September 14, 2011, this Court issued a
Report–Recommendation and Order wherein we
recommended that Defendant's Motion be granted without
prejudice and that the Doe Defendant be dismissed
without prejudice. Dkt. No. 18. In both instances, we
found that Plaintiff failed to attribute any personal
involvement of either Defendant in any wrongdoing. In
light of his *pro se* status, we further recommended that
prior to outright dismissing the action, Plaintiff be
afforded an opportunity to amend his Complaint in order
to extrapolate on his claims that the Defendants violated
his Eighth Amendment rights.

Approximately one week later, on September 22,
2011, Plaintiff submitted an Amended Complaint. Dkt.
No. 19, Am. Compl. Thereafter, on October 6, 2011, the

Honorable Gary L. Sharpe, United States District Judge,
approved and adopted this Court's
Report–Recommendation in its entirety and referred the
Amended Complaint to this Court for review. Dkt. No. 20.

#### II. DISCUSSION

##### A. Applicable Law

Section 1915(e) of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed *in forma
pauperis,* "the court shall dismiss the case at any time if
the court determines that ... the action or appeal (i) is
frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C.
§ 1915(e)(2)(B). On January 25, 2011, Plaintiff's request
to proceed with this matter *in forma pauperis* was granted.
Dkt. No. 7. Thus, 28 U.S.C. § 1915(e) applies and it is this
Court's responsibility to determine whether Plaintiff may
properly maintain the Amended Complaint prior to
permitting service to be accomplished.

Moreover, under 28 U.S.C. § 1915A, a court must, as
soon as practicable, *sua sponte* review "a complaint in a
civil action in which a prisoner seeks redress from a
governmental entity or officer or employees of a
governmental agency" and must "identify cognizable
claims or dismiss the complaint, or any portion of the
complaint, if the complaint (1) is frivolous, malicious, or
fails to state a claim upon which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune
from such relief." 28 U.S.C. §§ 1915A(a) & (b); *see also
Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir.1999) (*per
curiam* ). With these standards in tow, we review
Plaintiff's Amended Complaint.

##### B. Plaintiff's Amended Complaint

We first not that in the caption of his Amended
Complaint, Plaintiff names as Defendants "Lester Wright,
Medical Chief" and "John Doe as Dr. Vadlamudi." *See*
Am. Compl. However, no where in his amended pleading
does he refer to nor state any factual allegation against
Defendant Wright. And, by Affidavit, dated, but not

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031392 (N.D.N.Y.)

(Cite as: 2011 WL 6031392 (N.D.N.Y.))

notarized, October 13, 2011, Plaintiff consents to the withdrawal of Defendant Wright. Dkt. No. 21. Thus, to the extent Plaintiff is voluntarily withdrawing his claim against Defendant Wright, we would recommend that such request to go to Plaintiff's failure to state a claim. In any event, because Plaintiff once again has failed to assert any personal wrongdoing against Defendant Wright, we would recommend dismissing him from this lawsuit due to Plaintiff's failure to state a claim.

**\*2** As to the claims against newly identified Defendant Vadlamudi, the Court notes that Plaintiff's Amended Complaint suffers from the same infirmities as his original Complaint. Plaintiff once again claims that his Eighth Amendment rights were violated when, while at Marcy Correctional Facility, he was purportedly denied medical care for his serious medical needs. As we found in our previous Report–Recommendation and Order, Plaintiff succeeds on one prong of his Eighth Amendment claim, but not on the second.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The plaintiff must allege conduct that is " 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.1992), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). This standard contains both objective and subjective elements. *Smith v. Carpenter,* 316 F.3d 178, 183 (2d Cir.2003). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183–84 (citing *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) & *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). The subjective element "entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway v. Coughlin,* 99 F.3d at 553 (quoting *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

As to the objective prong, Plaintiff sufficiently sets forth enough facts to draw the conclusion that his medical condition is, in fact, sufficiently serious to warrant protection under the Eighth Amendment. His Amended Complaint, including the attachments thereto, sufficiently show that he is diabetic who suffers from cellulitis, poor circulation, Hepatitis B, and has an infection on his leg. Plaintiff was successful in establishing his serious medical condition with his original Complaint. However, Plaintiff fails to show that he has been deprived medical treatment for this serious medical need, or that treatment was delayed. Furthermore, as to the subjective prong, Plaintiff once again fails to allege that the named Defendant, now Dr. Vadlamudi, acted in such a way that could be viewed as deliberately indifferent to those serious medical needs. Instead, Plaintiff emphasizes the seriousness of his medical condition and how rapidly it is deteriorating. But the Court is flummoxed as to what role Dr. Vadlamudi played in failing to treat the condition. All we know from reading the Amended Complaint is that Dr. Vadlamudi treated Plaintiff.[FN1] The attachments to the pleading are not helpful to Plaintiff, in fact, they suggest, if they are to be believed, that Plaintiff has interfered with his own recovery by failing to follow medical recommendations and instructions and, at times, by refusing other recommended treatment. For example, attached to the Amended Complaint is a letter, dated November 26, 2010, from Carl J. Koenigsman, M.D., Deputy Commissioner/Chief Medical Officer of the New York State Department of Correctional Services,[FN2] and is addressed to a law fellow with the Sylvia Rivera Law Project, who presumably was representing Plaintiff at that time. The letter, which was written in response to an inquiry regarding Plaintiff's medical care, states as follows:

> FN1. It further appears that Plaintiff was being treated in the Marcy RMU or Regional Medical Unit. Regional Medical Units have been established by the Department of Correctional Services to provide long term nursing care and rehabilitative services to inmates whose condition requires a higher level of care than is available in the general prison population. *Rosario v. New York State Dep't of Corr. Servs.,* 2003 WL 22429271, at \*1 (S.D.N.Y. Sept.24,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031392 (N.D.N.Y.)

(Cite as: 2011 WL 6031392 (N.D.N.Y.))

FN2. In April 2011, the Department of Correctional Services and the Division of Parole were merged into one entity, now referred to as the Department of Corrections and Community Services.

**\*3** Mr. Nelson is a diabetic with an ulcer on his lower extremity. He also has a DVT of his lower extremity. Mr. Nelson has received medical evaluation and treatment for these conditions. However, progress toward improvement of these conditions has been hampered by noncompliance with recommended treatments.

DVT is treated with warfarin and regular monitoring of blood work. He has refused these treatments at times. As well, at times he refuses dressing changes for the ulcer on his leg. He has been noted to tamper with the dressing on the ulcer and may be getting external contamination from self inoculation with feces.

The medical staff at Marcy are attending to Mr. Nelson's medical problems in spite of his noncompliance with treatment recommendations and undermining of his care. He does not have gangrene of the extremity, but he is at risk of such. In communicating with your client, please assist DOCS medical staff by stressing the importance of regular compliance with medication, blood work, dressing changes, and glycemic control.

Am. Compl. at p. 6.[FN3] A prisoner who declines medical treatment cannot turn around and sue the medical professional whose judgment the prisoner has questioned and even defied. *Jones v. Smith,* 784 F.2d 149, 151–52 (2d Cir.1986) (affirming lower court ruling that a prisoner who declines medical treatment cannot establish an Eighth Amendment claim for medical deliberate indifference); *Hardy v. Diaz,* 2010 WL 1633379, at \*6 n. 12 (N.D.N.Y. Mar.30, 2010) (noting that skipping medical appointments and failing to comply with treatment directions can undermine an Eighth Amendment medical indifference claim); *Guarneri v. Hazzard,* 2010 WL 1064330, at \*13

(N.D.N.Y. Mar.22, 2010) ("Plaintiff's history of refusing to comply with the directions of the medical staff and physicians undermines his claims of deliberate indifference.") (citations omitted); *Brown v. White,* 2010 WL 985184, at \*8 & 11 (N.D.N.Y. Mar.15, 2010) (Sharpe, D.J., adopting Rep. Rec.) ("The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation.") (citing *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986)); *Amin v. Cnty. of Onondaga,* 2006 WL 1650764, at \*8 (N.D.N.Y. June 13, 2006) (noting that plaintiff's non-compliance with medical advice and treatment provided an additional ground for dismissing his medical indifference claim).

FN3. Plaintiff did not label his attachments, thus the citation reference is to the page number automatically assigned by the Court's Case Management Electronic Case Filing System.

The other attachments to the Amended Complaint merely show that Plaintiff was sent out for emergency care, and on at least one occasion, Dr. Vadlamudi approved the callout. Despite being given an opportunity to do so, Plaintiff has failed to allege that Dr. Vadlamudi participated in any wrongdoing, thus, Plaintiff fails to state a claim for which relief can be granted. As such, we recommend that this action be **dismissed** in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. CONCLUSION

**\*4 WHEREFORE,** for the reasons stated herein, it is hereby

**RECOMMENDED,** that the Amended Complaint be **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties have fourteen (14) days within which to file written objections

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031392 (N.D.N.Y.)

(Cite as: 2011 WL 6031392 (N.D.N.Y.))

to the foregoing report. Such objections shall be filed with the Clerk of the Court.

    *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 29 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

N.D.N.Y.,2011.

Nelson v. Wright
Slip Copy, 2011 WL 6031392 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2011 WL 6030994 (N.D.N.Y.)

(Cite as: 2011 WL 6030994 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Dennis NELSON, Plaintiff,

v.

Lester WRIGHT et al., Defendants.

No. 9:10–cv–997 (GLS/RFT).

Dec. 5, 2011.

Dennis Nelson, Elmira, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Christopher W. Hall, Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

***MEMORANDUM–DECISION AND ORDER***

GARY L. SHARPE, District Judge.

### I. *Introduction*

**\*1** Plaintiff *pro se* Dennis Nelson brings this action under 42 U.S.C. § 1983, alleging his constitutional rights were violated by defendants. (*See* Am. Compl., Dkt. No. 19.) In a Report–Recommendation and Order (R & R) filed October 20, 2011, Magistrate Judge Randolph F. Treece recommended that pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Nelson's Amended Complaint be dismissed. [FN1] (*See generally* R & R, Dkt. No. 22.) Pending are Nelson's objections to the R & R. (*See* Dkt. No. 23.) For the reasons that follow, the R & R is adopted in its entirety.

> [FN1.] The Clerk is directed to append the R & R to this decision, and familiarity therewith is presumed.

### II. *Standard of Review*

Before entering final judgment, this court routinely reviews all report and recommendation orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. See Almonte v. N.Y. State Div. of Parole, No. 04–cv–484, 2006 WL 149049, at \*6–7 (N.D.N.Y. Jan.18, 2006). In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.*

### III. *Discussion*

Nelson's "objections" consist of factual allegations which discuss the care, or lack thereof, that defendant Dr. Vadlamudi provided to him. (*See* Dkt. No. 23 at 1–2.) The facts provided discuss the seriousness of his injury, the treatments prescribed, and the results of these treatments. (*See id.*) However, what Nelson fails to appreciate is that the principal deficiency Judge Treece found was his inability to show that Dr. Vadlamudi acted with the requisite state of mind to sustain an Eighth Amendment claim. (*See* R & R at 4.) Even if Nelson did not exacerbate his own injury, as he now claims he did not (*see* Dkt. No. 23 at 2), this still does not equate to a showing that Dr. Vadlamudi was deliberately indifferent to Nelson's condition, (R & R at 4–6). In sum, none of his "objections" reference a perceived error by Judge Treece.

Because Nelson fails to raise any specific errors in the R & R, the court concludes that a *de novo* review is unnecessary. Having found no clear error in the R & R, the court accepts and adopts Judge Treece's R & R in its entirety.

### IV. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Randolph F. Treece's October 20, 2011 Report–Recommendation and Order (Dkt. No. 22) is **ADOPTED** in its entirety; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Nelson's Amended Complaint (Dkt. No. 19) is **DISMISSED;** and it is further

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6030994 (N.D.N.Y.)

(Cite as: 2011 WL 6030994 (N.D.N.Y.))

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties by mail and certified mail.

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Nelson v. Wright
Slip Copy, 2011 WL 6030994 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)

(Cite as: 2008 WL 268215 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Dennis NELSON, Plaintiff,
v.
Eliot SPITZER; David Rock, Superintendent, Great
Meadow Correctional Facility; P. Brady, Correctional
Officer, Great Meadow Correctional Facility, Brian
Fischer; Richard Potter; J. Gumlaw; M. Cleveland; et
al., Defendants.
No. 9:07-CV-1241 (TJM)(RFT).

Jan. 29, 2008.
Dennis Nelson [FN1], Comstock, NY, pro se.

> FN1. Plaintiff has filed twenty-two other civil
> rights actions in this District. Several of
> plaintiff's filings relate to the medical condition
> of his leg. *See Nelson v. Lee, et al.,*
> 9:05-CV-1096 (NAM)(DEP); *Nelson v. Roberts,*
> 9:06-CV-0518 (GLS)(DRH); and *Nelson v.
> Smith, et al.,* 9:06-CV-0477 (GLS)(GHL).

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.
**I. Background.**
   *1 Presently before the Court is complaint, together
with an *in forma pauperis* application, filed by plaintiff
Dennis Nelson, who is presently incarcerated at the Great
Meadow Correctional Facility. Dkt. No. 1. Plaintiff also
requests injunctive relief. Dkt. No. 4.
   As is more fully discussed below, plaintiff must pay
the $350.00 filing fee in full, and submit an amended
complaint, before this action may be permitted to proceed.

**II. Discussion.**

**A. *In forma pauperis* application**

Section 1915(e) directs that, when a plaintiff seeks to
proceed *in forma pauperis,* "(2) ... the court shall dismiss
the case at any time if the court determines that-... (B) the
action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief." 28 U.S.C. § 1915(e)(2)(B).[FN2] Thus, the court
has a responsibility to determine that a complaint may be
properly maintained in this district before it may permit a
plaintiff to proceed with an action *in forma pauperis.*[FN3]
*See id.* Although the court has the duty to show liberality
towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605,
606 (2d Cir.1990) (per curiam), and extreme caution
should be exercised in ordering *sua sponte* dismissal of a
pro se complaint before the adverse party has been served
and the parties have had an opportunity to respond,
*Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983),
there is a responsibility on the court to determine that a
claim is not frivolous before permitting a plaintiff to
proceed with an action *in forma pauperis. See e.g. Thomas
v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam)
(holding that a district court has the power to dismiss a
complaint *sua sponte* if the complaint is frivolous).

> FN2. In determining whether an action is
> frivolous, the court must look to see whether the
> complaint lacks an arguable basis either in law or
> in fact. *Neitzke v. Williams,* 490 U.S. 319, 325
> (1989).

> FN3. Dismissal of frivolous actions pursuant to
> 28 U.S.C. § 1915(e) is appropriate to prevent
> abuses of the process of the court, *Harkins v.
> Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as
> well as to discourage the waste of judicial
> resources. *Neitzke,* 490 U .S. at 327.

   In the present case, the Court finds that plaintiff's
financial status would qualify him to file or "commence"
this action without prepaying in full the filing fee.
However, 28 U.S.C. § 1915(g), as amended, provides:

   In **no event** shall a prisoner bring a civil action or

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)

(Cite as: 2008 WL 268215 (N.D.N.Y.))

appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.[FN4]

> FN4. The statute provides the imminent danger exception as "a safety valve for the 'three-strikes' rules to prevent impending harms, not those harms that had already occurred." *Malik v. McGinnis,* 293 F.3d 559, 562-563 (2d Cir.2002). "The exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." *Johnson v. Barney,* 2005 WL 2173950, *1 (S.D.N.Y.2005). *See also, McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998) (imminent danger must be at the time plaintiff seeks to file the suit, not at the time of the alleged incidents).

28 U.S.C. § 1915(g) (emphasis added). Accordingly, the Court has a responsibility to determine that a plaintiff has not brought actions, on three or more occasions, which have been dismissed as frivolous, malicious or for failure to state a claim before permitting that plaintiff to proceed with an action *in forma pauperis. Id.*

A review of plaintiff's prior proceedings reveals that plaintiff does have three "strikes" and, thus, should not be permitted to proceed with this action *in forma pauperis. See Nelson v. Lee,* 9:05-CV-1096 (DEP)(NAM), Dkt. Nos. 44 and 47; *Nelson v. Hamel,* 9:07-CV-540 (GLS)(RFT), Dkt. No. 4; and *Nelson v. Conway,* No. 04-CV-6163CJS(Fe) (W.D.N.Y. Apr. 21, 2004) (Defendants' Motion (Dkt. No. 40) Ex. B). This Court has reviewed, and concurs with, the findings of Chief District Judge Mordue, District Judges Sharpe and Siragusa, and Magistrate Judge Peebles, with respect to the prior actions filed by this plaintiff and dismissed by the federal courts, as detailed in the aforesaid cases.[FN5]

> FN5. In *Nelson v. Lee,* 9:05-CV-1096,

Magistrate Judge Peebles stated that the "finding [in *Nelson v. Conway,* No. 04-CV-6163, that plaintiff had three strikes, was] entitled to preclusive effect ." *Nelson v. Lee,* No. 9:05-CV-1096, Dkt. No. 44 at 10 (citing *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288-89)).

**\*2** Further, the Court has reviewed the complaint to determine whether plaintiff is under an imminent danger of serious physical injury. In his complaint, plaintiff alleges that staff at Great Meadow Correctional Facility are threatening to harm plaintiff if he tries to leave his cell for medical appointments to treat gangrene in his lower left leg.[FN6] Dkt. No. 1 at 5-6. Plaintiff has previously filed allegations regarding this injury, claiming denial of adequate medical treatment and alleging potential amputation of his left leg. *See Nelson v. Lee,* 9:05-CV-1096; *Nelson v. Nesmith,* 9:06-CV-1177;[FN7] *Nelson v. Conway,* No. 04-CV-6163CJS(Fe) (W.D.N.Y. Apr. 21, 2004). After reviewing the allegations contained in plaintiff's present complaint, the court concludes that plaintiff's claims do not fall within the "imminent danger" exception.

> FN6. In his request for injunctive relief, plaintiff indicates that the medical appointments are required to change the dressing on his lower left leg. Dkt. No. 4 at 5.

> FN7. A motion by the defendants seeking revocation of plaintiff's *in forma pauperis* status and conditional dismissal of his complaint under 28 U.S.C. § 1915(g), absent plaintiff's prepayment in full of the applicable filing fee, is currently pending in *Nelson v. Nesmith. See id.* at Dkt. No. 23.

**B. Complaint**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)

(Cite as: 2008 WL 268215 (N.D.N.Y.))

*Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J .) (§ 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.") (citation omitted). Parties may not be held liable under § 1983 unless it can be established that they have acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* No. 92-CV-4288, 1992 WL 380914 (S.D.N.Y., Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* No. 95-CV-1500, 1995 WL 743719, *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994)) (McAvoy, C.J.) (citation omitted). "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)) (other citations omitted).

Plaintiff's present complaint fails to allege **specific acts** by **specific defendants,** and thus fails to show personal involvement for most of the defendants in the alleged violation of plaintiff's constitutional rights. In fact, the only defendants mentioned in the body of the complaint are Brady and Gumlaw.[FN8] Dkt. No. 1 at 5-6.

> FN8. As to these defendants, plaintiff merely alleges that they are threatening to harm him if he leaves his cell for medical appointments. Dkt. No. 1 at 5-6. Words alone, however violent, are not held to amount to an assault. *Hurdle v. Ackerhalt,* No. 92-CV-1673, 1993 WL 71370, *1 (N.D.N.Y. Mar. 8, 1993) (McAvoy, D.J.) (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 n. 7 (2d Cir.1973), *cert. denied,* 414 U.S. 1033 (1973)). 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse. *Alnutt v. Cleary,* 913 F.Supp. 160, 165-66 (W.D.N.Y.1996) (citations omitted). Mere allegations of threats and harassment do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983. *Hurdle,* 1993 WL

71370, *1 (citing *Morgan v. Ward,* 699 F.Supp 1025, 1055 (N.D.N.Y.1988) (Munson, J .); *Nelson v. Herdzik,* 559 F.Supp. 27 (W.D.N.Y.1983); *Williams v. Pecchio,* 543 F.Supp. 878 (W.D.N.Y.1982)).

Plaintiff's complaint is not sufficient to state a claim for the violation of plaintiff's constitutional or statutory rights by the named defendants. Accordingly, plaintiff's complaint is dismissed pursuant to 28 U.S.C. §§ 1915(e). In light of plaintiff's *pro se* status, **upon payment of the full filing fee of $350.00 for this action,** the Court will allow plaintiff an opportunity to file an amended complaint. Plaintiff's amended complaint must allege specific facts demonstrating that a case or controversy exists between plaintiff and the named defendants which plaintiff has a legal right to pursue and over which this Court has jurisdiction.

**\*3** Any such amended complaint, **which shall replace in its entirety the previous complaint filed by plaintiff,** must contain a caption that clearly identifies, by name, each individual that plaintiff is suing in the present lawsuit and must bear the case number assigned to this action. The body of plaintiff's complaint must contain a short and plain statement of facts in support of plaintiff's claims, set forth in sequentially numbered paragraphs. Each paragraph shall set forth one act of misconduct or wrongdoing about which plaintiff complains, and shall include (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred and (v) the nexus between such misconduct and plaintiff's civil and/or constitutional rights.

**C. Injunctive relief**

Plaintiff has requested that this Court issue a preliminary injunction against the defendants. Dkt. No. 4. However, as the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), in order to be granted a preliminary injunction, the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)

(Cite as: 2008 WL 268215 (N.D.N.Y.))

tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district Court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre,* 850 F.Supp. 143, 144 (N.D.N.Y.1994) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge that denied inmate's request for injunctive relief).

The Court has found that the complaint filed by plaintiff is insufficient and that an amended complaint must be filed for this action to proceed. Without a valid complaint, plaintiff can not possibly establish that his claim has a likelihood of success on the merits of the claim or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. Therefore, the Court denies plaintiff's motion for injunctive relief without prejudice to file a new motion after plaintiff has filed an amended complaint and it has been accepted by Order of this Court.[FN9]

> **FN9.** Plaintiff must also pay the full filing fee of $350.00 as directed above.

## III. Conclusion.

Plaintiff is advised that his failure to (1) prepay the $350.00 filing fee in full **and** (2) file an amended complaint, **within thirty (30) days** of the filing date of this Decision and Order, may result in the dismissal of this action, with prejudice. *See* Fed.R.Civ.P. 41(b).

WHEREFORE, it is hereby

ORDERED, that plaintiff's application to proceed *in forma pauperis* is DENIED, and it further

ORDERED, that should plaintiff wish to proceed with this action, he **must, within thirty (30) days** of the filing date of this Decision and Order, (1) prepay the $350.00 filing fee in full **and** (2) file an amended complaint which complies with the pleading requirements of the Federal Rules of Civil Procedure and the terms of this Decision and Order, and it is further

**\*4** ORDERED, that should plaintiff fail to comply with the terms of this Decision and Order, the Clerk return the file to this Court for further consideration, including

whether this action should be dismissed, with prejudice, pursuant to Rule 41(b), and it is further

ORDERED, that upon plaintiff's prepayment of the $350.00 filing fee in full **and** the filing of an amended complaint, this matter be returned to the Court for further review, and it further,

ORDERED, that plaintiff's motion for injunctive relief (Dkt. No. 4) is denied without prejudice for the reasons stated above, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff.

N.D.N.Y.,2008.

Nelson v. Spitzer
Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 2173950 (S.D.N.Y.)

(Cite as: 2005 WL 2173950 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Johnathon JOHNSON, Plaintiff,
v.
M.A. BARNEY, Prison Guard, and Oracz, Sergeant,
and Frank J. Tracy, Superintendent, and Sullivan,
Captain, Several Unknown Defendants, Defendants.
No. 04 Civ. 10204(LBS).

Sept. 6, 2005.
*MEMORANDUM AND ORDER*

SAND, J.

**\*1** Plaintiff brought this *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983 alleging that his Eighth Amendment constitutional rights were violated. Defendants now move to dismiss the complaint on the ground that plaintiff is in violation of the Prisoner Litigation Reform Act's "three strikes" provision. *See* 28 U.S.C. § 1915(g).

I. Background

Plaintiff alleges that on October 21, 2003, while temporarily incarcerated at Downstate Correctional Facility ("Downstate"), he was physically assaulted by M.A. Barney, a corrections officer, and three other unidentified corrections offers, while Sergeant Oracz observed the incident. Plaintiff claims that former Superintendent of Downstate, Frank J. Tracy, refused his request to preserve the videotape footage of the incident and that Captain Sullivan fabricated the report of the investigation into the incident.

Plaintiff further claims that he was "provoke[d] and harassed by the same prison guards [involved in the original assault]" when he retuned to Downstate in August 2004.

II. Discussion

Defendants move to dismiss the complaint on the ground that plaintiff is in violation of the Prisoner Litigation Reform Act's "three strikes provision."

Under the PLRA, a prisoner cannot "bring a civil action ... or proceeding [*in forma pauperis* ] if the prisoner, has on 3 or more occasions, while incarcerated or detained in any facility, brought an action ... in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). There is an exception to the three strikes rule, however, where a prisoner is under "imminent danger of serious physical injury." *Id.* Plaintiff does not dispute that he has had more than three actions dismissed as frivolous. The sole question, therefore, is whether the imminent danger exception applies.

The Second Circuit has adopted the construction of this statutory provision that every circuit to consider the issue has reached: the imminent danger exception applies only if a prisoner is under imminent danger of serious physical injury at the time his or her complaint is filed. *Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) ("[T]he exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct."). Here, the allegations of danger concern the Downstate Correctional Facility, while plaintiff is generally incarcerated at the Southport Correctional Facility. The fact that plaintiff may pass through Downstate on infrequent occasions in the future means that any threat he faces is merely hypothetical, rather than imminent. Moreover, there is no reason to believe plaintiff would be in danger of serious physical injury on the occasions when he may return to Downstate, for he has alleged only a single incident of past physical assault. Were this enough to constitute an ongoing danger, the requirement that the danger alleged be contemporaneous with the complaint would become almost meaningless.

**\*2** Plaintiff's general allegation of "harassment" at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2173950 (S.D.N.Y.)

(Cite as: 2005 WL 2173950 (S.D.N.Y.))

Downstate during a subsequent stay there is also insufficient to trigger the imminent danger exception. *See* *Abdul-Akbar v. McElvie,* 239 F .3d 307, 315 (3d Cir.2001) ( "[G]eneralized allegations [of harassment] strike us as insufficient to connect the separate incidents ... into a pattern of threats of serious physical injury that are ongoing.")

Finally, plaintiff attempts to salvage his claim by arguing that Captain Sullivan, who was involved in the incident at Downstate, is currently employed as a corrections officer at Southport, where defendant generally resides. However, the only allegation against Sullivan is that he fabricated a report and not that he in any way physically threatened plaintiff. Therefore, plaintiff's contention that Sullivan's presence at Southport places him in imminent danger is without merit.

III. Conclusion

For the reasons set forth above, defendant's motion to dismiss the complaint is granted.
SO ORDERED.

S.D.N.Y.,2005.

Johnson v. Barney
Not Reported in F.Supp.2d, 2005 WL 2173950 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.